Filed 5/12/22  P. v. Gregory CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WILL ARTHUR GREGORY,<br><br>Defendant and Appellant. | B312425<br><br>(Los Angeles County<br>Super. Ct. No. BA154098) |

APPEAL from an order of the Los Angeles Superior Court, Kathleen Kennedy, Judge.  Affirmed.

Mary Jo Strnad, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chang and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Will Arthur Gregory (defendant) argues that the trial court erred in denying his petition for resentencing under Penal Code section 1170.95.[1]  There was no prejudicial error, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts[2]

On July 24, 1996, defendant approached Corey Hayes on the street outside a liquor store.  Defendant was a known member of a Bloods gang.  Hayes was not a gang member but was wearing a blue sweatshirt, the color frequently worn by gang members to signify affiliation with the Crips gang, notorious rivals of the Bloods.  Defendant asked Hayes, "Where you from, Blood?"  Defendant then shot Hayes dead.

### II.    Procedural Background

#### A.    *Underlying conviction, sentence and appeal*

The People charged defendant with murder (§ 187, subd. (a)), and also alleged that in committing the murder defendant personally used a firearm (§ 12022.5, subd. (a)).  The People also alleged that defendant's 1985 convictions for robbery (§ 211) constituted "strikes" within the meaning of our three strikes law,

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    We take judicial notice of the opinion and appellate record from the direct appeal in this matter.  (*People v. Gregory* (Apr. 3, 2000, B124803) [nonpub. opn.].)

and also constituted prior serious felonies (§§ 667, subds. (a), (b)-(j), 1170.12).

The matter proceeded to a jury trial. The trial court instructed the jury that murder is the unlawful killing of a human being with malice. The jury was instructed that it could convict only if defendant acted with "malice aforethought," which meant the intent to kill ("express malice") or with conscious disregard of how his actions are dangerous to life ("implied malice"). The jury was also instructed that murder may be first degree or second degree. Because defendant acted alone, the jury was not instructed on the theories of felony murder liability (that is, a killing committed by someone else when a defendant and that person are committing a felony together) or natural and probable consequences liability (that is, a killing committed by someone else when a defendant is aiding and abetting some lesser crime).

The jury convicted defendant of second degree murder and found true the allegation that he personally used a handgun. In a bifurcated proceeding, the trial court found the prior conviction allegations to be true and sentenced defendant to a term of 15 years to life, tripled to 45 years to life under the three strikes law.

Defendant appealed his conviction. This court affirmed the conviction but remanded for resentencing because the trial court had failed to sentence defendant for either the firearm enhancement (§ 12022.5, subd. (a)), or the serious felony enhancement (§ 667, subd. (a)), both of which were mandatory.[3]

---

[3] On November 29, 2000, the trial court struck the serious felony enhancement and imposed the midterm of four years for the firearm enhancement. Defendant was resentenced on

### B. *Petition for resentencing*

In April 2021, defendant filed a petition to vacate his second degree murder conviction under section 1170.95. Defendant checked various boxes on a form petition alleging that a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; that at trial he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; and that he could not now be convicted of first or second degree murder because of changes made to section 188 and section 189, effective January 1, 2019. He also checked boxes alleging that he was not the actual killer; that he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of first degree murder; that he was not a major participant in the felony or that he did not act with reckless indifference to human life during the course of the crime or felony; and that the victim was not a peace officer. He also requested counsel.

Without appointing counsel, the trial court summarily denied defendant's petition, reasoning that defendant was "ineligible for relief" because "he was convicted of second degree murder based on evidence that he shot the victim personally" and

---

October 1, 2002, and a five-year term pursuant to section 667, subdivision (a) was imposed; the abstract of judgment dated October 2, 2002, reflects defendant's corrected sentence to be 50 years to life.

4

that "there was no felony murder or natural [and] probable consequence instructions."[4]

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in summarily denying his section 1170.95 petition. Because our consideration of this argument involves questions of law and the application of that law to undisputed facts, our review is de novo. (*Tsasu LLC v. U.S Bank Trust, N.A.* (2021) 62 Cal.App.5th 704, 715.)

A person is entitled to relief under section 1170.95 if, as relevant here, (1) "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder[ or] murder under the natural and probable consequences doctrine," (2) he "was convicted of murder," and (3) he "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).) In January 2019, our Legislature amended section 188 to provide that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought" and that "[m]alice shall not be imputed to a person based solely on his . . . participation in a crime." (§ 188, subd. (a)(3).) Our Legislature's purpose was to ensure that "[a] person's culpability for murder [is] premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1(g).)

As a threshold matter, we conclude that the trial court erred in summarily denying defendant's petition. In *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis)*, our Supreme Court held

---

4  The record on appeal does not indicate what court documents the trial court may have reviewed prior to issuing this ruling, and the parties are also silent on this issue.

that if a defendant files a facially compliant petition and requests the appointment of counsel, the trial court must appoint counsel and entertain further briefing regardless of whether the record of conviction unequivocally demonstrates that the defendant is not entitled to relief. (*Id.* at p. 964.) Here, defendant's petition was facially compliant and he requested counsel. Thus, *Lewis* dictates the conclusion that the trial court erred in summarily denying defendant's petition.

However, this finding of error is the first step, not the last. That is because *Lewis* went on to hold that an error in summarily denying a section 1170.95 petition is harmless unless the defendant can show ""it is reasonably probable that if [he or she] had been afforded assistance of counsel [and briefing] his [or her] petition would not have been summarily denied without an evidentiary hearing."" (*Lewis*, *supra*, 11 Cal.5th at p. 974.)

We conclude that defendant was not prejudiced by the summary denial in this case because the record forecloses defendant's entitlement to relief under section 1170.95 as a matter of law, such that the appointment of counsel and further briefing from that counsel would not have mattered. In assessing whether a defendant seeking relief under section 1170.95 has made out a prima facie case warranting an evidentiary hearing, a trial court must take the petition's factual allegations as true and ask "'whether the petitioner would be entitled to relief if [those] allegations were proved.'" (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "However, if the record, including the court's own documents [from the record of conviction] "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner.""" (*Ibid.*)

6

Defendant has not made the requisite prima facie showing of entitlement to relief under section 1170.95. This is true for two reasons. First, the record establishes as a matter of law that defendant was the actual killer. Defendant acted alone, so the jury's guilty verdict necessarily constitutes a finding that *he* committed the murder. Along the same lines, because the jury was never instructed on a natural and probable consequences theory or felony-murder theory, his murder conviction could not rest on either theory of vicarious liability; instead, the instructions only permitted the jury to convict based on defendant's *personal* culpability. Second, and contrary to what defendant argues on appeal, the record establishes as a matter of law that defendant acted while personally harboring the necessary mens rea. Because the jury could convict defendant of murder only if it found that he personally acted with express or implied malice, its guilty verdict necessarily encompasses such a finding of personally harbored malice.

Defendant resists this conclusion with what boils down to four arguments.

First, he argues the trial court engaged in impermissible factfinding to find defendant was the actual killer. For support, he cites the recently amended section 1170.95, subdivision (d)(3), which authorizes a trial court at the "evidentiary hearing" to consider only "*the procedural history*" from an appellate opinion and *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*). The authorities defendant cites are inapt. Section 1170.95 deals with the evidentiary hearing; here, we are addressing the prima facie stage. In *Langi*, defendant was one of four individuals who beat and robbed a man when *one of the four* punched the man, who fell, hit his head, and died; *Langi* merely held that the recitation

7

in the appellate opinion that Langi was the "puncher" was not conclusive in light of the involvement of the others as well as the jury instructions that allowed the jury to find Langi guilty even if someone else threw the punch. (*Id.* at pp. 975-977.) In this case, however, there was only one assailant and no jury instructions permitting a jury to find defendant guilty based on someone else's conduct. In short, a trial court does not engage in impermissible factfinding by citing the undisputed facts set forth in an appellate opinion.[5]

Second, defendant argues that the jury was, in fact, instructed on a theory of vicarious liability—namely, the natural and probable consequences theory—because the jury instruction defining murder explained that "implied" "malice" exists when a defendant intentionally commits an act, "[t]he *natural consequences* of the act are dangerous to human life," and when "[t]he act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." (Italics added.) We reject this argument: "The 'natural consequences' language in the instruction for second degree murder does not transform [a defendant's] conviction into one for murder under the natural and probable consequences doctrine within the meaning of section 1170.95." (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1059.) In the implied malice instruction, the phrase "natural and probable consequences" is used to hold a defendant liable for the "natural and probable consequences" of his own act or failure to act; by contrast, the "natural and

---

5       In pertinent part, our prior opinion stated: "[Defendant] then shot Hayes with a black semiautomatic gun which he pulled out from under his shirt. Hayes died from the gunshot wound to the chest."

8

probable consequences" theory of vicarious liability is used to hold a defendant liable for *another person's* criminal conduct as long as the other person's criminal conduct is a "natural and probable consequence" of what defendant agreed to aid and abet—and, critically, irrespective of the defendant's own intent regarding that further criminal conduct. As *Soto* noted, these are "distinctly different concepts" (*id.* at pp. 1056-1057), and, like *Soto*, we decline to equate them.

Third, defendant argues that the true finding on the personal use of a firearm does not wholly disqualify him from relief because, based on the instruction given, the jury could have found the allegation true by concluding only defendant shot Hayes intending to hurt or menace him, while not intending to kill him. This argument might be relevant if there were more than one person involved in this crime, but there is not: Defendant acted alone and the jury's finding of culpability is necessarily one based on defendant's personal acts and mental state. Thus, whether the jury *also* found that defendant discharged a firearm causing death is of no matter because defendant was the only one firing a weapon in this case. What is more, because defendant was never charged with this enhancement, the absence of a true finding is irrelevant.

Lastly, defendant seems to dispute his guilt, arguing that there was only one eyewitness to the crime and no dispositive forensic evidence. This is irrelevant to a section 1170.95 petition. Section 1170.95 provides a mechanism to overturn certain homicide and attempted homicide convictions when they were committed by someone else, and are based on a theory of vicarious liability without any proof of the defendant's personal intent. Section 1170.95 is not an all-purpose "relitigate your

9

guilt" mechanism.

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST